**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Timothy Brown, | : | Case No. 3:07CV1929 |
| Plaintiff, | : | |
| vs. | : | |
| Commissioner, Social Security Administration, | : | **MEMORANDUM DECISION AND ORDER** |
| Defendant. | : | |

The parties have consented to have the undersigned Magistrate enter judgment in this case. Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Appeal's Council's final determination denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. §§ 416 (i) and 423. Pending are issues arising from the briefs of the parties (Docket Nos. 16 and 20). For the reasons set forth below, the Commissioner's decision is affirmed.

**PROCEDURAL BACKGROUND**

Plaintiff filed an application for Title II DIB on August 19, 2002, alleging that he had been disabled since July 28, 2002 (Tr. 63-65). The application was denied initially and upon reconsideration (Tr. 48-51, 53-54). Plaintiff requested an administrative hearing, and on June 13, 2005, Administrative Law Judge (ALJ) Sferrella conducted such hearing at which Plaintiff, represented by counsel, Vocational Expert (VE)

Dr. John Finch and Medical Expert (ME) Dr. Jonathan Nusbaum appeared and testified. The ALJ issued an unfavorable decision on September 12, 2005 (Tr. 26-35). The Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's decision the Commissioner's final decision (Tr. 6-8).

## JURISDICTION

This Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832-833 (6th Cir. 2006).

## FACTUAL BACKGROUND

On June 13, 2005, Plaintiff, a 5'10" male weighing 190 pounds, was 43 years of age. He completed high school and in 1984 he was employed by Marion Steel. At the steel mill, Plaintiff was a laborer engaged in basic steel production. He lifted, stooped and kneeled in performing his duties at the steel company (Tr. 449-450). He stopped working in July 28, 2002, because of lung problems (Tr. 449). Now, he was supported by his sister and family. He received food stamps (Tr. 464).

Plaintiff started treating for pneumonia in July 2002 (Tr. 450). In August 2002, Plaintiff underwent surgery to remove a lung mass (Tr. 450, 451). After surgery, Plaintiff stopped regurgitating blood but he still had pain and tenderness at the center of the breast bone (Tr. 451). The pain was precipitated by jarring, sudden movement and walking. Plaintiff had used, although unsuccessfully, a stimulator and injections to alleviate pain (Tr. 454).

Plaintiff had muscle spasms for which he took muscle relaxants. Plaintiff was prescribed a narcotic pain reliever to treat pain. He suspected that there were side effects of this medication--blurred vision,

2

cephalgia and loss of concentration (Tr. 453, 454).

In 2003, Plaintiff developed rectal fistulas. He had them drained in June 2003 and February 2004 and the anal sphincter was fixed but the fistulas reappeared (Tr. 455, 458). Plaintiff had cysts that seeped and internal bleeding, the etiology of which was uncertain (Tr. 456, 458, 459).

Lifting caused chest muscle pain. Plaintiff sat on a pillow to alleviate rectal pain (Tr. 460). Plaintiff opined that he could stand for one half hour before his chest and back began to hurt and he could walk half of a city block, recuperate within twenty minutes and then complete the block (Tr. 461, 466). Plaintiff could not concentrate for more than one half hour and his memory was faulty (Tr. 467).

During the six months preceding the hearing, Plaintiff had been evaluated at a pain clinic. There he was placed on a narcotic pain reliever (Tr. 462). His medication made him tired; consequently, Plaintiff napped up to three hours daily(Tr. 466). Plaintiff noted that his breathing was labored when it rained (Tr. 465).

Upon review of the record, the ME diagnosed Plaintiff with a non-malignant mass in his chest, post-thoracotomy syndrome, supraventricular tachycardia and a rectal abscess. In his opinion, Plaintiff's impairments did not meet any of the Listings (Tr. 469, 470). Plaintiff was capable of lifting twenty pounds occasionally, ten pounds frequently, sitting for two hours at a time and sitting for six hours in an eight-hour workday, standing and/or walking up to one hour at a time and six hours in an eight-hour workday. Bending, stooping, crouching and climbing stairs could be performed occasionally. The use of ladders would be precluded as would any activity that requires twisting of the torso. Finally, exposure to cold temperatures, high concentrations of dust, fumes or high humidity would be precluded (Tr. 473).

Upon examination by Plaintiff's counsel, the ME confirmed that the side effects of Plaintiff's medication precluded driving. The ME did not concede that the side effects of Plaintiff's medication would significantly limit the terms of his concentration and ability to focus (Tr. 474). The ME did agree that there was no evidence to suggest that Plaintiff was a malingerer or that he intentionally exaggerated his complaints of pain; however, the ME did think the complaints of pain were excessive.

The VE characterized Plaintiff's past relevant work in the steel manufacturing business as heavy labor, his position as a torch operator was deemed a heavy strength, semiskilled position and his work as a strand tender was classified as a heavy strength, semiskilled position (Tr. 475). Clearly, Plaintiff could not do his past work. He was capable of performing a reduced amount of sedentary and light work such as production inspector, assembler and surveillance system monitor. There were 1,300 inspector jobs, 2,700 assembler jobs and 4,200 surveillance monitor jobs in Central Ohio and the contiguous county area. Statewide, there were 25,000 inspector positions, 30,000 assemble positions and 40,000 monitor positions (Tr. 477). All of these jobs would accommodate Plaintiff's postural, mental and environmental limitations including his substance abuse addiction (Tr. 478). Of course, if Plaintiff slept or napped during the day as a result of his medication, all sustained, competitive employment would be precluded (Tr. 480).

## **MEDICAL EVIDENCE**

**1990's**

Plaintiff was prescribed a pain medication to treat pain in an area of the right upper chest on April 28, 1995 (Tr. 229).

Dr. Sudesh S. Reddy discovered a large area of infiltrate in Plaintiff's right lung on March 13, 1998

(Tr. 228). Plaintiff underwent a follow-up examination on March 26, to assess the status of his pneumonia (Tr. 225). His platelet count exceeded the normal range (Tr. 226). In November, he was treated for abdominal cramping and diarrhea (Tr. 224).

On January 11, 1999, Plaintiff complained of a strained muscle, urinary problems and testicular pain (Tr. 223).

**2001**

Plaintiff was treated for left ear pain on March 6 (Tr. 222).

**2002**

On July 9, Plaintiff was diagnosed with mild chronic obstructive pulmonary disease (COPD) (Tr. 138). On August 6, 2002, Dr. Sudesh Reddy performed a gastroscopy of Plaintiff's esophagus. Trivial/minimal gastritis was observed (Tr. 139).

Plaintiff underwent a bronchoscopy on August 7 (Tr. 143). The results of the biopsy showed no evidence of a collapsed lung or emphysema (Tr. 146). In fact, the cytology was benign (Tr. 152). The computed tomography (CT) scan and chest X-rays showed no evidence of masses, tumors or fluid on his lungs (Tr. 155).

On August 21, Plaintiff's right lung was clear and the heart size was normal (Tr. 179, 185). On August 26, Plaintiff underwent surgery to remove part of his left lung (Tr. 163, 168). Small left collapse of the lung was noted (Tr. 181). On August 29, Dr. Kuldeep K. Vaswani reported that the position of the left-sided chest tube was unchanged (Tr. 189).

After his thoracotomy, Plaintiff developed chest pain for which Dr. Adil O. Katabay prescribed

5

therapy and referred him to a pain clinic (Tr. 200). Plaintiff was evaluated for maintenance of sharp stabbing chest pain in September (Tr. 303). During the course of treatment, Plaintiff had an allergic reaction to the methadone (Tr. 296). The results of the arterial blood gas study conducted on November 25 were within normal range (Tr. 211, 212).

Dr. W. Jerry McCloud opined on December 9 that Plaintiff could lift and/or carry up to fifty pounds occasionally, frequently lift and/or carry twenty-five pounds, stand about six hours in an eight-hour workday, sit about six hours in an eight-hour workday and engage in unlimited pushing and/or pulling (Tr. 232). There were no postural, environmental, visual, communicative or manipulative limitations (Tr. 233-235). **2003**

On January 28, Dr. Chadha noted that Plaintiff lungs were clear and there were no side effects from the consumption of Vioxx (Tr. 385). Dr. Reddy noted that Plaintiff's lungs were clear on April 27 (Tr. 282). Dr. Penny Mullins prescribed antibiotics and pain medication to treat a perianal abscess on June 5 (Tr. 241). Dr. Narayanan Ponnusamy removed the abscess on June 11 (Tr. 251). Plaintiff exchanged the pain patch for an injection on July 17 (Tr. 278). The suture was removed under local anesthesia and a pain medication was prescribed on June 19 (Tr. 257, 260).

Floyd Sours, MA, a psychologist, conducted a clinical interview on August 6, finding that Plaintiff suffered from major depression, alcohol abuse and some mild symptoms or difficulty in social, occupational school functioning. Overall, Plaintiff was functioning well (Tr. 308).

Psychologist Deryck D. Richardson, Ph. D., opined on August 23 that Plaintiff had all of the signs of alcohol abuse (Tr. 322). Plaintiff was moderately limited in his ability to complete a normal workweek

without interruptions, respond appropriately to change in the work setting and maintain concentration, persistence or pace and was mildly limited in his activities of daily living and maintaining social functioning (Tr. 324).

**2004**

Dr. Maura Manning diagnosed Plaintiff with a rectal fistula on February 17 (Tr. 329, 373). Dr. Ponnusamy removed the fistula on February 23 (Tr. 333). Plaintiff was treated for bronchitis and sinusitis (Tr. 376). Plaintiff underwent a complete colonscopy and the removal of a recurrent fistula on May 12 (Tr. 354).

Dr. Dorsey L. Gilliam opined on May 19 that Plaintiff could stand/walk for three to four hours in an eight-hour workday, lift and/or carry up to five pounds frequently, lift and/or carry up to ten pounds occasionally. Plaintiff was markedly limited in his ability to push/pull, bend and reach and moderately limited in his ability to engage in repetitive foot movements. Although in Dr. Gilliam's estimation, Plaintiff was unemployable, his physical and mental/functional limitations were expected to last up to nine months (Tr. 359).

In October, Plaintiff was treated for chest pain; however, the diagnostic results did not show any abnormality (Tr. 372).

**2005**

On January 9, Dr. Jonathan Nusbaum specified that the medical impairments established by the evidence included a form of tachycardia, recurrent fistulas and partially controlled pain with medication (Tr. 363). In his opinion, Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry

up to ten pounds, stand and/or walk about six hours in an eight-hour workday (Tr. 366). Plaintiff could never climb ladders or twist or expose himself to extreme temperatures, vibration, humidity, hazards, fumes, odors or chemicals (Tr. 367, 369).

The chest X-rays administered on April 4 showed evidence of possible pneumonia (Tr. 389, 391). The etiology of Plaintiff's rectal bleeding was undetermined on May 11 (Tr. 394-395, 396). Plaintiff presented to the emergency room on October 13, with rectal bleeding. The results of the abdominal series were normal (Tr. 404). The CT scan of the abdomen and pelvis showed small calcifications in the prostate but no obstructive uropathy (Tr. 408). Plaintiff underwent a colonoscopy on October 13. There was evidence of minimal diverticulosis but no evidence of abscesses or fistula openings (Tr. 411).

Plaintiff presented to the emergency room on October 24 with suicidal ideations and rectal bleeding (Tr. 412). The bleeding was deemed intermittent and he was admitted for psychiatric treatment (Tr. 413). Although Plaintiff was under extreme situational stress, he was discharged when his hallucinations diminished and he denied active suicidal ideation (Tr. 420, 442).

## **STANDARD FOR DISABILITY**

To establish entitlement to disability benefits, a claimant must prove that he or she is incapable of doing substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to last for a period of twelve months or results in death. *Murphy v. Secretary of Health and Human Services*, 801 F. 2d 182, 185 (6th Cir. 1986) (*citing* 42 U. S. C. § 423(d)(1)(A) (1986)). The claimant must show that his or her impairment results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques derived from

acceptable medical sources. 20 C.F.R. §§ 404.1513, 404.1528 (Thomson Reuters/West 2008).

To determine disability, an ALJ is required to follow a five-step sequential evaluation set forth in the agency regulations. *Walters v. Commissioner of Social Security*, 127 F. 3d 525, 529 (6th Cir. 1997). The five steps can be summarized as follows:

(1) if the claimant is doing substantial gainful activity, he or she is not disabled.
(2) if the claimant is not doing substantial gainful activity, his or her impairment must be severe before he or she can be found disabled.
(3) if the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his or her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.
(4) if the claimant's impairment does not prevent him or her from doing his or her past relevant work, he or she is not disabled.
(5) even if the claimant's impairment does prevent him or her from doing his or her past relevant work, if other work exists in the national economy that accommodates his or her residual functional capacity and vocational factions, he or she is not disabled.

*Id.* (*citing* 20 C.F.R. § 1520 (1997)).

During the first four steps, the claimant has the burden of proof. *Walters v. Commissioner of Social Security*, 127 F. 3d 525, 529 (6th Cir. 1997) (*citing Young v. Secretary of Health and Human Services*, 925 F.2d 146, 148 (6th Cir. 1990); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987)). This burden shifts to the Commissioner only at step five. *Id.*

## **ALJ DETERMINATIONS**

After consideration of the entire record, the ALJ made the following findings:

1. Plaintiff met the non-disability requirements for a period of disability and DIB set forth in Section 216(i) and he was insured for benefits through September 12, 2005.

2. Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability.

3. Plaintiff had the following impairments that reduced his ability to perform basic work related functions: status post lobectomy, post surgery neuralgia, recurrent rectal fistula, inflammatory bowel disease, Wolff-Parkinson-White Syndrome and a depressive disorder. Collectively Plaintiff's impairments were severe based on the requirements in 20 C. F. R. § 404.1520(c). However, these medically determinable impairments did not meet or equal any of the listed impairments in Appendix 1, Subpart P of Regulation Number 4.

4. Plaintiff retained the residual functional capacity to sit for two hours at a time for a total of six hours in an eight-hour workday, stand/walk for one hour at a time for a total of six hours in a workday, lift/carry ten pounds and alternate between sitting and standing positions but he could not perform work requiring climbing, twisting or exposure to a high humidity environment or around heights and machinery. Plaintiff was limited to work that entailed simple repetitive tasks in a low stress work environment.

5. Plaintiff was unable to perform his past relevant work.

6. Plaintiff, a younger individual with a high-school education, had no transferrable work skills to perform jobs within his residual function capacity for a significant range of sedentary work. Although his exertional limitations did not permit him to perform the full range of sedentary work, using the Medical -Vocational Rules 201.27 and 201.28 as a framework for decision-making, there were a significant number of jobs in the economy that he could perform such as production inspector and assembler.

7. Plaintiff was not under a disability as defined in the Act at any time through the date of the decision or September 12, 2006.

(Tr. 34-35).

## STANDARD OF REVIEW

Pursuant to 42 U. S. C. § 405(g), this Court has jurisdiction to review the Commissioner's decisions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). Judicial review of the Commissioner's decisions is limited to determining whether such decision is supported by substantial evidence and whether the Commissioner employed the proper legal standards. *Id*. (*citing Richardson v. Perales,* 91 S. Ct. 1420, 1427 (1971)). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* (*citing Kirk v. Secretary of Health and Human Services*, 667 F. 2d 524, 535, (6th Cir. 1981)

*cert. denied*, 103 S. Ct. 2428 (1983)).  The reviewing court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility.  *Id*. (*citing Brainard v. Secretary of Health and Human Services*, 889 F. 2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F. 2d 383, 387 (6th Cir. 1984)).

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole.  *Id*. (*citing Kirk,* 667 F. 2d at 536).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *See Kinsella v. Schweiker*, 708 F. 2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F. 2d 535, 545 (6th Cir. 1986) (en banc).

## **DISCUSSION**

Plaintiff claims that this case should be reversed and remanded, pursuant to sentence six of 42 U. S. C. § 405(g), to the Commissioner for consideration of two errors.  First, the ALJ erred in assessing his complaints of pain and finding his testimony not entirely credible pursuant to SSR 96-7p.  Second, the ALJ should include the new and material evidence submitted to the Appeals Council in assessing his entitlement to DIB.

Defendant claims that substantial evidence supports the ALJ's credibility finding.  Further, Defendant claims that the evidence submitted does not warrant remand under sentence six of 42 U. S. C. § 405(g) as such evidence is not material.

1.  Assessment of pain and credibility.

Plaintiff argues that although the ALJ employed the appropriate legal--AUTHORITY–POLICY INTERPRETATION RULING TITLED II AND XVI:  EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS:

11

ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, 1996 WL 374186, SSR 96-7p (July 2, 1996)--for evaluating credibility and complaints of pain, he failed to accurately apply the rules. Specifically, he (1) discounted Plaintiff's testimony that he did not seek treatment for back pain, (2) discounted Plaintiff's testimony as to rib pain, (3) erroneously interpreted his testimony of daily activities, (4) failed to consider the report from the Marion Pain Clinic and the ME, and (5) failed to properly analyze Plaintiff's pain.

The claimant's credibility may be properly discounted "to a certain degree ... where an [administrative law judge] finds contradictions among the medical reports, claimant's testimony, and other evidence." *Warner v. Commissioner of Social Security*, 375 F. 3d 387, 392 (6th Cir. 2004) (*citing Walters*, 127 F.3d at 531). It is true that the ALJ found that there is little evidence in the record for treatment of back pain (Tr. 32). However, this finding is supported by the evidence in the record. Plaintiff specified when documenting his progress in the pain clinic that his back pain originated in his back (Tr. 294, 297, 300, 386, 388). There is little evidence in the record that he was actually treated for back pain (Tr. 385). The ALJ could discount Plaintiff's credibility since Plaintiff's testimony and the record were inconsistent.

Plaintiff contends that the ALJ discounted his testimony as to pain, noting that "his medication use does not reflect that he is taking strong pain relievers or steroid injections." Plaintiff has taken this sentence out of context. Within the same paragraph the ALJ explains that Plaintiff was not taking strong pain relievers or steroid injections for the type of rib pain that he described. The record supports this finding. Plaintiff was treated for left rib pain post surgery (Tr. 391). He was prescribed Vicodin and advised to suspend consumption of the Methadone (Tr. 392). The ALJ could (1) reasonably conclude that Plaintiff was

not taking a strong pain relievers for rib pain and (2) discount Plaintiff's testimony as to severity of his rib pain.

Plaintiff claims that the ALJ erroneously found that he had no difficulty sitting as he watched television daily since his tolerance for sitting may have changed due to ongoing rectal problems. Initially, the Magistrate notes that the rules make it imperative to consider Plaintiff's activities of daily living in assessing credibility. *See* 20 C. F. R. § 404.1529; 1996 WL 374186 * 3. The ALJ did not speculate about Plaintiff's ability to sit and watch television. He relied upon Plaintiff's own testimony. Plaintiff admitted to Mr. Sours that he watched television before breakfast, after breakfast, and after dinner (Tr. 308). In his Function Report, Plaintiff admitted that he watched television "a lot" (Tr. 93). It was reasonable to conclude that Plaintiff was capable of sitting and watching television in assessing credibility.

Plaintiff argues that support for his credibility can be found in the treatment record from the Marion Pain Clinic. The ALJ considered all of Plaintiff's treatment records as they relate to complaints of pain in considering credibility (Tr. 32). During the course of treatment at the Marion Pain Clinic, Dr. Chadha prescribed medication and administered injections based on Plaintiff's subjective complaints and his self-prepared status report. Dr. Chadha's report is not supported by objective medical evidence and is, in effect, Plaintiff's report. This self serving documentation was not persuasive that Plaintiff's complaints of pain were credible.

Plaintiff claims that Dr. Nusbaum's testimony supports his credibility. The ALJ adopted Dr. Nusbaum's opinion with respect to Plaintiff's physical impairments and their limitations. The Magistrate cannot find that ALJ discounted Plaintiff's credibility as a result of Dr. Nusbaum's testimony.

Finally, in discounting Plaintiff's credibility, the ALJ relied heavily on the objective medical evidence that there was a lack of objective medical evidence to support Plaintiff's complaints of pain.

The Sixth Circuit Court of Appeals established the following analysis for evaluating a claimant's assertions of disabling pain. *Felisky v. Bowen*, 35 F. 3d 1027, 1038 (6th Cir. 1994). The district court must examine whether there is objective medical evidence of an underlying medical condition. *Id.* If there is objective medical evidence of the underlying medical condition, then the court must examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *Id.* at 1038-1039.

At this juncture in the analysis, the ALJ found the content of the medical record insufficient to support Plaintiff's claims that his impairments were of the severity to produce disabling pain. He proceeded to consider his daily activities, location, duration, frequency and intensity of Plaintiff's pain, precipitating and aggravating factors, the type, dosage and side effects, if any, of any medications, his treatment record, other than medication and other measures used to relieve pain. *See* 20 C. F. R. § 404.1529(c)(2) and (c)(3) (Thomson Reuters/West 2008). The ALJ supported his decision sufficiently to discount Plaintiff's credibility. In particular, the ALJ found that the claimed effects of medication were not entirely credible. The ALJ considered that Plaintiff's discomfort was controllable. He considered that Plaintiff sat and watched television daily. He also considered that the intensity of the pain was not based on the underlying medical evidence. He further considered Plaintiff's treatment record (Tr. 31, 32). Ultimately he concluded that although there was objective medical evidence of an underlying medical condition, the objective

medical evidence did not confirm the severity of the alleged pain arising from the condition as alleged by Plaintiff. The Magistrate finds that the ALJ's conclusion is supported by substantial evidence.

2.     New and Material Evidence

After the ALJ rendered his unfavorable decision, Plaintiff presented at the hospital with suicidal ideations. He was diagnosed with benzodiazepam abuse secondary to major depression. The medical records from his treatment were submitted to the Appeals Council but they declined to review Plaintiff's claim or remand the case to the Commissioner for consideration of this new evidence. Here, Plaintiff proffers the new evidence to demonstrate "significant worsening" of his psychological condition.

A district court cannot consider new evidence in deciding whether to uphold, modify or reverse the ALJ's decision where the Appeals Council considers new evidence, as here, but declined to review the application for benefits on the merits. *Cline v. Commissioner of Social Security*, 96 F. 3d 146, 148 (6th Cir. 1996) (*citing Cotton v. Sullivan*, 2 F. 3d 692, 695-696 (6th Cir. 1993)). The district court can, however, remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material and there was a good cause for not presenting it in a prior proceeding. *Id.* (*citing Cotton*, 2 F. 3d at 696). When the district court issues such a remand order under sentence six of 42 U. S. C. § 405(g), it refrains from ruling on the correctness of the administrative determination. *Id.* Instead the court remands the case to the Commissioner because new evidence has come to light that was not available at the time of the administrative hearing and that the evidence might have changed the outcome of the prior proceeding. *Id.* at 148-149 (*citing Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991); *see also*, *Faucher v. Secretary of Health and Human Services*, 17 F. 3d 171, 173-175 (6th Cir. 1994)). However,

evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial.  *Jones v. Commissioner of Social Security*, 336 F. 3d 469, 478 (6th Cir. 2003) (*citing Wyatt v. Secretary of Health and Human Services*, 974 F. 2d 690, 695 (6th Cir. 1992) *cert. denied*, 113 S. Ct. 1012 (1993)).

The records included in the supplement to the Appeals Council reflect that, after the administrative hearing, Plaintiff continued to (1) suffer from nonspecific abdominal pain and rectal bleeding (Tr. 404, 405, 408, 410, 412, 416) and (2) undergo pain management therapy (Tr. 421-444).  He presented to the hospital on one occasion with suicidal ideations (Tr. 412, 414, 419).  Plaintiff argues that such evidence demonstrates a significant worsening of his psychological condition.

The Magistrate cannot consider such evidence in judicial review for the aforementioned reasons. Nor can the Magistrate remand the case as evidence of subsequent deterioration is not material to the determination of Plaintiff's entitlement to DIB during the insured period of disability.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed.

**IT IS SO ORDERED**.

/s/ Vernelis K. Armstrong
United Stats Magistrate Judge

Dated:  July 31, 2008